## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RAYMOND HILDEBRAND**, <br> 3501 Meadowbrook Drive <br> Midwest City, OK 73110 <br><br> **TAYLOR HILDEBRAND**, <br> 3501 Meadowbrook Drive <br> Midwest City, OK 73110 <br><br>     *Plaintiffs*, <br><br> v. <br><br> **UNITED STATES DEPARTMENT OF DEFENSE,** <br> 1000 Defense Pentagon, Room 3E880 <br> Washington, D.C. 20301; <br> <u>Serve</u>: Merrick Garland, U.S. Attorney General <br>     950 Pennsylvania Avenue NW <br>     Washington, D.C. 20530 <br><br> <u>Also serve</u>: Matthew Graves, U.S. Attorney <br>     for the District of Columbia <br>     950 Pennsylvania Avenue NW <br>     Washington, D.C. 20530 <br><br> **FRANK KENDALL III**, in his official capacity as Secretary of the Air Force, <br> 1670 Air Force Pentagon <br> Washington, D.C. 20310 <br> <u>Serve</u>: Merrick Garland, U.S. Attorney General <br>     950 Pennsylvania Avenue NW <br>     Washington, D.C. 20530 <br><br> <u>Also serve</u>: Matthew Graves, U.S. Attorney <br>     for the District of Columbia <br>     950 Pennsylvania Avenue NW <br>     Washington, D.C. 20530 <br><br>     *Defendants.* | Civil Action No.: 1:23-cv-2459 <br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW, Plaintiffs Raymond "Drew" Hildebrand and Taylor Hildebrand (collectively, "Plaintiffs"), by and through undersigned counsel, and files this Complaint seeking declaratory and injunctive relief, monetary damages, and other appropriate relief to redress the acts or omissions Defendants the United States Department of Defense ("DOD") and Frank Kendall III, in his official capacity as Secretary of the United States Air Force, ("SECAF") (collectively, "Defendants") committed in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the First Amendment of the U.S. Constitution, and the District of Columbia Human Rights Act as amended, D.C. Code §§ 2-1401.01 *et seq.* ("DCHRA"), and in further support thereof, Plaintiffs allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are two brothers who live and work together. Taylor and Drew are both religious men, and they have dedicated their lives to serving not only the Lord, but our country, as well. Specifically, Drew is an airplane mechanic and Taylor is an airplane electrician, both stationed at Tinker Air Force Base ("Tinker AFB") near their home in Oklahoma. At the time Drew and Taylor began working for the Air Force, Defendant did not require vaccination against COVID-19 as a condition of continued employment. But in 2021, that all changed, and Plaintiffs were advised that they needed to become vaccinated or else they would be terminated.

2.      In response, Plaintiffs pointed out a third option. Relying on the First Amendment, Title VII, and the Rehabilitation Act, Plaintiffs exercised their right to request a reasonable religious accommodation to the Air Force's mandatory COVID-19 vaccination policy. Naturally, by submitting to the Air Force their accommodation requests, Plaintiffs supervisors learned of their sincerely held religious beliefs and the conflict that exists between their aforesaid beliefs and the aforementioned Air Force policy.

3.    Upon learning of Plaintiff's sincerely held religious beliefs, the Air Force began to treat each respective Plaintiff differently that it treated their non-religious colleagues. At all times relevant, Plaintiffs were able to perform at or in excess of the Air Force's reasonable expectations and they performed, and remain able to perform, the essential functions and duties of their jobs with or without an accommodation for their Christian faith and beliefs. Despite this, and despite the fact neither Drew nor Taylor ever received a derogatory mark on their employment record, Defendant[1]  began treating Plaintiffs differently and disparately while their accommodation requests remained pending for months on end. As of the date of this filing, neither Plaintiff has received a response to the accommodation requests they submitted nearly *two years* ago.

4.    As explained below, this action pertains not only to Defendant's refusal to reasonably accommodate Plaintiffs, but also, this action seeks to redress the disparate treatment Plaintiffs endured based on their membership in a protected class.

## **PARTIES**

5.    Raymond "Drew" Hildebrand ("Drew") is an adult resident of the State of Oklahoma and United States citizen employed by the United States Department of Defense ("DOD"), Department of the Air Force ("Air Force") as an Aircraft Mechanic (564AMXSMDXPAA) at Tinker Air Force Base. At all times relevant to this action, Plaintiff is a member of a protected class (religion) and holds sincere religious beliefs that conflicted with one or more DOD/Air Force policies for which he sought a reasonable accommodation.

---

[1] In accordance with each respective Plaintiff's NOD, any action filed regarding their claims raised during the EEO Interactive Process and in their formal Complaints must name the Secretary of the Air Force as the defendant in any action filed. As Secretary of the Air Force, Frank Kendall III, is sued in his official capacity, and in such capacity, Defendant is liable for the unlawful actions of his directors, subordinates, employees, agents, officers, generals, and any other personnel employed by the Air Force and all Air Force employees and/or servicemembers stationed at Tinker AFB.

6.      Taylor Hildebrand ("Taylor") is an adult resident of the State of Oklahoma and United States citizen employed by the United States Department of Defense ("DOD"), Department of the Air Force ("Air Force") as an Aircraft Electrician (564AMXSMXDPAD) at Tinker Air Force Base. At all times relevant to this action, Plaintiff is a member of a protected class (religion) and holds sincere religious beliefs that conflicted with one or more DOD/Air Force policies for which he sought a reasonable accommodation.

7.      The United States Department of Defense ("DOD") is an executive branch department of the federal government and executive agency within the meaning intended by Executive Order 14043. The DOD is charged with *inter alia* coordinating and supervising all agencies and functions of the federal governments defense and its operation of the various branches of the Armed Forces, including the United States Air Force.

8.      Defendant Frank Kendall III is the Secretary of the United States Air Force, and he is sued in his official capacity. His offices are located at the U.S. Air Force Headquarters, 1670 Air Force Pentagon, Washington, D.C. 20310. In his role as Secretary of the Air Force, Defendant is the head Department of Defense figure responsible for all decisions made related to the actions or omissions complained of herein. Defendant is also vicariously liabile for the actions and omissions of his subordinate employees, including those who serve the United States in both, active-duty and civilian capacities. The Air Force is a federal agency that employs more than twenty-five (25) persons, and therefore, the Air Force qualifies as an employer as intended by 42 U.S.C. § 12111(5).

//

//

//

## JURISDICTION

9.      Jurisdiction is conferred upon this court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12117, both of which provide for original jurisdiction for Plaintiff's claims arising under the laws of the United States.

10.     This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims brought pursuant to the D.C. Code and District of Columbia common law, in that such claims are so closely related to Plaintiff's federal claims providing the basis for this Court's original jurisdiction as to satisfy the same case or controversy requirement prescribed by Article III of the United States Constitution.

11.     In the alternative, this court has diversity jurisdiction over all claims alleged in this action in that Plaintiffs are Oklahoma residents, Defendant is a citizen of the District of Columbia for diversity jurisdiction purposes, and the amount in controversy exceeds $75,000.00.

## VENUE

12.     Venue is proper pursuant to U.S.C. §1391 in that Defendants are residents of the District of Columbia for jurisdictional purposes, and a substantial portion of the events and decision-making behind the events giving rise to this action occurred in the District of Columbia.

13.     Venue is also proper pursuant to 42 U.S.C. § 2000e-(5)(f)(3) because the alleged unlawful employment practices were committed within this district, the employment records relevant to the alleged unlawful employment practices are maintained in this district, and Defendant maintains its principal office in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14.     On September 27, 2022, Plaintiffs filed complaints with the Air Force's EEO Office and initiated the required EEO Interactive Process.

15.     On January 27, 2023, Plaintiffs received their Notices of their Right to File Formal Complaints. The suspense date to do so was February 14, 2023.

16.     On February 14, 2023, Plaintiffs filed their formal complaints with the Air Force's EEO Office.

17.     On May 25, 2023, the Air Force issued Plaintiffs' respective Notices of Dismissal regarding their formal Complaints ("NOD").

18.     Each respective Plaintiff received notice of their formal complaints' dismissals on May 28, 2023.

19.     Plaintiffs have exhausted all administrative remedies and complied with all conditions precedent in maintaining this action, in that Plaintiffs initiated the Air Force's EEO Interactive Process within forty-five (45) days of the alleged acts of discrimination, filed their formal complaint within fifteen (15) days of receiving their Notice of Right to File a Formal Complaint, and Plaintiffs hereby initiate this action on August 23, 2023, which is within ninety (90) days of May 28, 2023, when each respective Plaintiff received their Notices of Dismissal.

## STATEMENT OF FACTS

### A.  Background

20.     In June 2015, Defendants hired Drew as an Aircraft Mechanic. Three years later, in April 2018, Defendants hired Drew's brother, co-Plaintiff Taylor, as an Aircraft Electrician.

21.     At the time Plaintiffs were hired, Defendants did not impose a COVID-19 vaccination or testing requirement as a condition of continued employment. Throughout 2020 and even through the first eight (8) months of 2021, Defendants maintained the status quo and did not require Plaintiffs to get vaccinated or test for COVID-19, even though January through

August 2021 were indisputably the deadliest and most dangerous months of the entire pandemic.

22.     Then, on August 24, 2021, Defendants advised Plaintiffs that, in order to maintain their employment, Plaintiffs needed to become vaccinated against COVID-19 and should they fail to do so, their careers would be in jeopardy.

23.     In response, Plaintiffs sought reasonable accommodations to the new mandatory vaccination policy. Specifically, Plaintiffs submitted reasonable accommodation requests to Defendants on the basis that, as devout Christians, Plaintiffs were unable to comply with the mandate due to the conflict that existed between their sincerely held religious beliefs and Defendants' newly promulgated policy.

24.     While Plaintiff's accommodation requests were pending review, Defendants permitted Plaintiffs to continue working, so long as they submitted to weekly COVID-19 testing and provided their respective supervisors with negative test results upon reporting for duty at the beginning of each week.

25.     At this time, the vaccination policy was in effect. Therefore, testing in lieu of vaccination served as a reasonable accommodation and Plaintiffs were glad to receive the accommodation and for the next eleven (11) months, Plaintiffs continued to work without remarkable incident.[2]

**B.  The Obligatory Compliance with "Accommodations" to Unenforceable Policies**

26.     On January 21, 2022, the United States District Court for the Southern District of Texas entered a preliminary injunction that *inter alia* forbid the federal government from

---

[2] Plaintiffs were repeatedly and routinely harassed because their religious beliefs conflicted with the DOD/USAF mandatory vaccination policy, and that harassment continued even after enforcement of the policy was enjoined, vacating any actual or perceived legal obligation that Plaintiffs had to become vaccinated.

implementing or enforcing Executive Order 14043[3] against any federal employee nationwide, including Plaintiffs. *See Feds for Medical Freedom v. Biden*, 30 F. 4th 503 (5th Cir. 2022).

27.    On March 2, 2022, Defendants published guidance[4] following the Fifth Circuit's issuance of a nationwide injunction, stating in pertinent part:

> To ensure compliance with the applicable preliminary nationwide injunction, which may be supplemented, modified, or vacated depending on the course of ongoing litigation, **the DAF will take no action to implement or enforce the COVID-19 vaccination requirement for civilian employees pursuant to E.O. 14043.**

28.    At all times relevant, Executive Order 14043 was the only mandatory vaccination policy Plaintiffs were subjected to that had force of law. No other policies existed or applied to Plaintiffs. As a result, as of March 2, 2022, the "mandatory vaccination policy" that conflicted with Plaintiffs' sincerely held religious beliefs and caused Plaintiffs to submit to Defendants their requests for reasonable accommodations had no force of law.

29.    As of March 2, 2022, Plaintiffs' accommodation requests should have been deemed moot insofar as (1) no enforceable policy compelling Plaintiffs to become vaccinated existed any longer, and (2) absent an enforceable policy, there is nothing to "accommodate" in regard to—that is, Plaintiff's need not obtain an accommodation to remain unvaccinated, when there is no obligation that Plaintiffs become vaccinated. In fact, requiring Plaintiffs to obtain an accommodation to an unenforceable policy is objectively impossible. There is nothing to which Plaintiffs can be "accommodated."

---

[3] On September 9, 2021, President Biden signed Executive Order No. 14043, which in relevant part "require[ed] COVID-19 vaccination for all of [ ] federal employees, with exceptions only as required by law."

[4] *See* Exhibit 1; *see also infra*, ¶¶ COVID-19 Vaccination Mandate Injunction for Civilian Employees Guidance, U.S. DEPT. OF THE AIR FORCE (published Mar. 2, 2022).

30.     Of course, logic dictates that whereas Plaintiffs cannot be accommodated, there cannot be enforcement of an "accommodation" that requires weekly COVID-19 testing.

31.     Boiled down to its essence, requiring Plaintiffs to test on a weekly basis to ensure they did not have COVID-19 while E.O. 14043 had legal effect (i.e., pre-injunction) constituted the provision of a reasonable accommodation. No issues exist at this point. However, as soon as the Fifth Circuit enjoined Defendants' enforcement of E.O. 14043, the aforesaid "reasonable accommodation" became moot as no policy existed to which anyone, including Plaintiffs, could be accommodated.

32.     Thus, when Defendants continued to enforce the weekly testing "accommodation" after March 2, 2022, this enforcement became that of a new, independent weekly-testing policy of its own.

33.     Understandably, the only civilian Air Force employees who could test for COVID-19 *in lieu of vaccination*, is limited exclusively to only those who are, of course, unvaccinated. Problematic here, is that the fact that as of March 3, 2022, the only civilian Air Force employees who remained employed (which is a condition precedent of being subjected to Defendants' weekly testing policy) and (2) remained unvaccinated (a condition precedent of testing *in lieu of vaccination*), were those who Defendants knew were religious.

34.     This is provable because Defendants granted medical exemptions to those whose medical conditions prohibited them from receiving any of the available COVID-19 vaccines. However, Defendants *did not grant any* religious accommodations, and Defendants still have not granted any religious accommodations as of the date this action is filed.

//

//

## C. Defendants' Discriminatory Weekly Testing Policy

35.     On September 9, 2021, President Biden signed Executive Order No. 14043[5] ("E.O. 14043"), which *inter alia* ordered all agencies to implement a program "requiring COVID-19 vaccination for all of its federal employees, with **exceptions** only as required by law."[6] (emphasis added).

36.     On September 13, 2021, the Task Force published Guidance titled "COVID-19 Workplace Safety: Agency Model Safety Principles"[7] pursuant to the aforesaid provision of E.O. 14043.

37.     Entirely devoid of any reference to religious accommodations, the Guidance *inter alia*, (1) required all federal employees including Plaintiffs to be "fully vaccinated" by November 22; and (2) delegated significant decision-making authority to the heads of each respective agency, including the Department of Defense and/or Department of the Air Force, which SECAF Kendall heads.

38.     Pursuant to the Guidance, Defendants did provide "exceptions" – but this term is overtly vague and gives rise multiple meanings.

39.     For example, an "exception" to E.O. 14043 is an **exemption**, which allows a civilian Air Force employee to continue his or her employment without becoming vaccinated and without the imposition of any additional conditions. Indeed, he or she is *exempt* from the mandatory vaccination policy.

---

[5] Exec. Order 14043; *see* <u>Exhibit 3.</u>
[6] "Vaccine Mandate" shall mean "requiring COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." Exec. Order No. 14043, § 2, 88 F.R. 175 (Sept. 9, 2021).
[7] Safer Federal Workforce, *COVID-19 Workplace Safety: Agency Model Safety Principles*, WHITE HOUSE (Sept. 13, 2021); *see* <u>Exhibit 4.</u>

40.     A second example of an "exception" to E.O. 14043 is an **accommodation**, which allows a civilian Air Force employee to continue his or her employment, so long as he or she adheres to a subsequent condition (i.e., the "accommodation") that is imposed in lieu of vaccination.

41.     At all times relevant, Defendants granted *exemptions* to civilian Air Force employees whose disability(ies) prevented them from getting vaccinated.

42.     Defendants did not, however, grant *exemptions* to civilian Air Force employees whose sincerely held religious beliefs prevented them from getting vaccinated—Defendants only granted *accommodations* to E.O. 14043—and all accommodations thereto were mooted upon the injunction rendering E.O. 14043 unenforceable.

43.     Since March 2, 2022, Plaintiffs have had no obligation to become vaccinated against COVID-19, and no policy with legal effect that requires the same has existed since.

44.     Despite this, on or about July 20, 2022, Defendants reminded Plaintiffs that if they fail to comply with their accommodations and submit weekly testing results proving that they are negative for COVID-19, Plaintiffs would be terminated.

45.     From July 20, 2022 through September 27, 2022 and onward, Defendants continued to require Plaintiffs and other religious civilian Air Force employees to submit weekly test results in order to maintain their employment while imposing no such requirement on any other civilian Air Force employee, both vaccinated *and unvaccinated* alike.

46.     Civilian Air Force employees who were vaccinated did not need to submit to weekly testing to keep their jobs.

47.     Civilian Air Force employees who were unvaccinated and had received a medical exemption from Defendants did not need to submit to weekly testing to keep their jobs.

48.     However, civilian Air Force employees who were unvaccinated for religious reasons (1) were not afforded exemptions and they *did have to* submit to weekly testing to keep their jobs.

49.     Thus, the only persons whom Defendants required to submit to weekly testing from July 20, 2022 onward, were religious civilian Air Force employee.

50.     In doing so, Defendants disparately treated Plaintiffs insofar as the testing policy is purportedly in place to mitigate the transmission and contraction of COVID-19, yet other similarly and even identically situated employees who were also unvaccinated were not subject to the same condition of continued employment.

51.     Moreover, it is well-established that vaccination does not prevent transmission or contraction, and therefore, even vaccinated civilian Air Force Employees could contract and transmit the virus, yet they too were not required to submit to weekly testing in order to keep their jobs.

52.     As a result, Plaintiffs had to submit to a condition of employment to which similar and identically situated colleagues were not required to submit, and the sole basis for which Defendants required Plaintiffs to test on a weekly basis was Plaintiffs' religion and their membership in a protected class. And because this constitutes discrimination in violation of Title VII and the DCHRA, Plaintiffs lodge the following claims to redress Defendants' violations of D.C. and federal law complained of herein:

### COUNT I
### RELIGIOUS DISCRIMINATION
### Violation of Title VII

53.     Plaintiffs incorporate by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

54.     Plaintiffs sincerely hold religious beliefs that conflict with Defendants' mandatory vaccination policy, and they are members of a protected class based on her religion.

55.     Specifically, in their requests for reasonable religious accommodations, Plaintiffs explained to Defendants that they are Christians and it is fundamental to their Christian faith that Plaintiffs refuse to receive or participate in any medical intervention, including a vaccination, if their informed consciences determine that the risks outweigh the benefits, or if doing so constitutes a sin.

56.     Plaintiffs pointed to authoritative Church teachings that demonstrate the principled religious basis on which Christians may determine receiving the COVID-19 vaccine constitutes a sin and/or is otherwise prohibited due to their sincerely held religious beliefs. Specifically, Plaintiffs informed Defendants that:

a. Vaccination is not morally obligatory in principle and so must be voluntary.

b. There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience.

c. A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Christian moral teachings.

d. A person is morally required to obey his or her sure conscience.

e. Abortion is a sin and contrary to the teachings of the Christian Church. As a result, a Christian may invoke Church teaching to refuse a vaccine developed or produced using abortion-derived cell lines.

57.     Plaintiffs sincerely believe that their bodies are not to be altered in any way other than through means by which God created them or through scientifically proven, safe, and effective manmade and necessary medical intervention. To consume or knowingly inject anything else into their bodies would constitute a sin and prevent their ability from one day, going to Heaven and

sharing that Place with God. The same applies for their sincerely held religious belief that life begins at conception and to receive any of the COVID-19 vaccines—all of which were made, produced, developed, derived, and/or manufactured through the use of aborted fetal cell line tissue—would also constitute a sin and impact her ability to go to Heaven.

58.     At all times relevant, Plaintiffs performed the essential functions of their jobs as an Aircraft Mechanic and as an Aircraft Electrician, respectively, at or in excess of Defendants' reasonable expectations.

59.     At all times relevant, Plaintiffs were and remain able to perform the essential functions of their jobs and performed all duties in full satisfaction of the job performance standards with or without a reasonable accommodation. This is evidenced by factors including without limitation, Plaintiffs' education, experience, work history, and her performance reviews.

60.     At all times relevant, Plaintiffs complied with all COVID-19 mitigation protocols Defendants implemented while E.O. 14043 remained in effect, including *inter alia* wearing masks, socially distancing, responding to frequent questioning concerning their symptoms, weekly testing, and submitting to daily temperature checks (collectively, "mitigation protocols").

61.     There is no dispute that Defendants and Plaintiffs are in agreement that the religious beliefs they asserted are in fact, religious.

62.     Plaintiffs' religious beliefs are sincerely held.

63.     There is no dispute that Defendants and Plaintiffs agree that their religious beliefs are in fact, sincerely held. Defendants never challenged the sincerity with which Plaintiffs hold their respective religious beliefs.

64.     Plaintiffs are employees within the meaning of Title VII.

65.     Defendants are employers within the meaning of Title VII.

66. Title VII forbids an employer from taking adverse employment action against employees because of their religion.

67. This extension of actionable religious discrimination is derived from Title VII's definition of "religion" to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

68. Plaintiffs can therefore make out their own respective prima facie cases under Title VII by showing (1) that they held bona fide religious beliefs, the practice of which conflicted with an employment duty; (2) the employer took adverse action—including disparately treating a plaintiff—because of his or her inability to comply with a job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision.

69. Here, Plaintiffs advised Defendants of their sincerely held religious beliefs and that they cannot inject unknown vaccines into their bodies and highlighted the fact that the ingredients and chemicals contained in the COVID-19 vaccines were unknown, the effects of the vaccines were unknown, and these variables without more information, precluded her from blindly injecting a substance into their bodies.

70. In response to learning of Plaintiffs' sincerely held religious beliefs and receiving their requests for religious accommodations to the mandatory vaccination policy, Defendants took adverse employment action against them by imposing additional conditions of employment that were not imposed on identically situated non-religious persons.

71. Defendants took the aforesaid adverse employment action against Plaintiffs with the intent and desire to harass, mock, ridicule, and further discriminate against Plaintiffs and to

retaliate against Plaintiffs because their religion conflicted with Defendants' policy-based preferences concerning vaccination.

72. The adverse employment actions complained of herein are directly, solely, and proximately motivated, in part, substantially, or entirely because of Plaintiffs' religion, and taking the aforesaid adverse employment actions against them gives rise to an actionable Title VII claim. *See* 42 U.S.C. § 2000e-2(a)(1) (actionable adverse actions includes discriminating with respect to the "terms" and "conditions" of employment).

73. As a direct and proximate result of the aforesaid complained of conduct and violation of Title VII, each respective Plaintiff sustained pecuniary and non-economic injuries in an amount of two hundred thousand dollars ($200,000.00), including lost wages, benefits, retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

### COUNT II
#### RELIGIOUS DISCRIMINATION
#### Violation of the D.C. Human Rights Act

74. Plaintiffs incorporate by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

75. Plaintiffs sincerely hold religious beliefs that conflict with Defendants' mandatory vaccination policy, and they are members of a protected class based on her religion.

76. Specifically, in their requests for reasonable religious accommodations, Plaintiffs explained to Defendants that they are Christians and it is fundamental to their Christian faith that Plaintiffs refuse to receive or participate in any medical intervention, including a vaccination, if their informed consciences determine that the risks outweigh the benefits, or if doing so constitutes a sin.

77. At all times relevant, Plaintiffs performed the essential functions of their jobs as an Aircraft Mechanic and as an Aircraft Electrician, respectively, at or in excess of Defendants' reasonable expectations.

78. At all times relevant, Plaintiffs were and remain able to perform the essential functions of their jobs and performed all duties in full satisfaction of the job performance standards with or without a reasonable accommodation. This is evidenced by factors including without limitation, Plaintiffs' education, experience, work history, and her performance reviews.

79. At all times relevant, Plaintiffs complied with all COVID-19 mitigation protocols Defendants implemented while E.O. 14043 remained in effect, including *inter alia* wearing masks, socially distancing, responding to frequent questioning concerning their symptoms, weekly testing, and submitting to daily temperature checks (collectively, "mitigation protocols").

80. There is no dispute that Defendants and Plaintiffs are in agreement that the religious beliefs they asserted are in fact, religious.

81. Plaintiffs' religious beliefs are sincerely held.

82. There is no dispute that Defendants and Plaintiffs agree that their religious beliefs are in fact, sincerely held. Defendants never challenged the sincerity with which Plaintiffs hold their respective religious beliefs.

83. Plaintiffs are employees within the meaning of the DCHRA.

84. Defendants and the DOD is an employer within the meaning of the DCHRA.

85. The DCHRA forbids an employer from taking adverse employment action against employees because of their religion.

86. Plaintiffs can therefore make out their own respective prima facie cases under the DCHRA by showing (1) that they held bona fide religious beliefs, the practice of which conflicted

with an employment duty; (2) the employer took adverse action—including disparately treating a plaintiff—because of his or her inability to comply with a job requirement; and (3) the plaintiff's religious practice was a motivating factor in the employer's decision.

87.     Here, Plaintiffs advised Defendants of their sincerely held religious beliefs and that they cannot inject unknown vaccines into their bodies and highlighted the fact that the ingredients and chemicals contained in the COVID-19 vaccines were unknown, the effects of the vaccines were unknown, and these variables without more information, precluded her from blindly injecting a substance into their bodies.

88.     In response to learning of Plaintiffs' sincerely held religious beliefs and receiving their requests for religious accommodations to the mandatory vaccination policy, Defendants took adverse employment action against them by imposing additional conditions of employment that were not imposed on identically situated non-religious persons.

89.     Defendants took the aforesaid adverse employment action against Plaintiffs with the intent and desire to harass, mock, ridicule, and further discriminate against Plaintiffs and to retaliate against Plaintiffs because their religion conflicted with Defendants' policy-based preferences concerning vaccination.

90.     The adverse employment actions complained of herein are directly, solely, and proximately motivated, in part, substantially, or entirely because of Plaintiffs' religion, and taking the aforesaid adverse employment actions against them gives rise to an actionable DCHRA claim.

91.     As a direct and proximate result of the aforesaid complained of conduct and violation of the DCHRA, each respective Plaintiff sustained pecuniary and non-economic injuries in an amount of two hundred thousand dollars ($200,000.00), including lost wages, benefits,

retirement funds, the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, attorneys' fees, and costs associated with this action.

**COUNT III**
**DISPARATE TREATMENT**
**Violation of Title VII**

92.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

93.     Plaintiff is a religious person, a member of a protected class, and qualified individual as intended by Title VII.

94.     Plaintiff is an employee and Defendants are Plaintiff's employer(s) as intended by Title VII.

95.     Defendants had actual or constructive knowledge of Plaintiff's sincerely held religious beliefs at all times relevant to this action.

96.     Plaintiffs experienced adverse employment action and a materially adverse change in the terms and conditions of her employment based on her sincerely held religious beliefs, in that Defendants continuously targeted and singled out Plaintiffs by requiring them to submit to unwanted medical procedures to maintain their employment while not requiring identically situated civilian Air Force employees to submit to the same medical procedures.

97.     Defendants subjected Plaintiffs to the aforesaid adverse employment action directly and proximately because of their membership in a protected class, because of the sincerely held religious beliefs to which they adhered, and in retaliation because they requested an accommodation to E.O. 14043 while it remained in effect.

98.     Defendants' decision to subject Plaintiffs to the aforesaid adverse employment action because of their religion constitutes disparate treatment in violation of Title VII.

99.     Defendants, motivated by unlawful reasons, disparately treated Plaintiffs intentionally, knowingly, and with the intent to harass, humiliate, and embarrass Plaintiffs and with the intent to coerce Plaintiffs into violating their sincerely held religious beliefs and get vaccinated to relieve themselves of this troublesome and embarrassing weekly requirement.

100.    Weekly testing humiliated and embarrassed Plaintiffs and subjected them to further harassment because, as explained above, the only persons who had to test weekly were those who were religious—and by singling out religious employees, Defendants knew or should have known that Plaintiffs would be subjected to friction, animosity, and at times even hostility due to the hotly debated and heavily polarized topic of vaccination.

101.    Defendants committed these actions with the intent to humiliate, ridicule, and dehumanize Plaintiffs because they engaged in constitutionally protected activity and/or because of Plaintiffs' membership in a protected class.

102.    All allegations set forth herein violate Title VII.

103.    As a direct and proximate result of Defendants' actions or omissions, Plaintiff sustained economic injuries in the amount of two-hundred thousand dollars ($200,000.00), including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT IV
### DISPARATE TREATMENT
### Violation of the D.C. Human Rights Act

104.    Plaintiffs incorporate by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

105.     Plaintiffs are religious persons, members of a protected class, and qualified individuals as intended by the DCHRA.

106.     Plaintiffs are employees and Defendants are Plaintiffs' employer as intended by the DCHRA.

107.     Defendants had actual or constructive knowledge of Plaintiffs' religion and sincerely held religious beliefs at all times relevant to this action.

108.     Plaintiffs experienced adverse employment action and a materially adverse change in the terms and conditions of his employment based on the allegations articulated above and duly incorporated by reference herein.

109.     Defendants committed the actions articulated above and duly-incorporated as to be complained of herein with the intent to humiliate, ridicule, and harass Plaintiffs, and Defendants did so directly and proximately because of Plaintiffs' sincerely held religious beliefs and membership in a protected class.

110.     All allegations set forth herein violate the DCHRA.

111.     As a direct and proximate result of Defendants' actions or omissions, Plaintiffs sustained economic injuries in the amount of two hundred thousand dollars, ($200,000.00), including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT V
### RETALIATION
### Violation of Title VII

112.     Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

113. Defendants engaged in systemic retaliation against Plaintiffs because they requested a reasonable religious accommodation.

114. Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiffs' rights to be free from workplace discrimination on the basis of their religion, their membership in a protected class, and their right to request and obtain an accommodation to policies that conflict with their sincerely held religious beliefs.

115. In retaliation for engaging in protected activity, Defendants subjected Plaintiff to adverse employment action as articulated above.

116. Defendants' retaliation against Plaintiff because of their religion, membership in a protected class, and the exercise of their right to request religious accommodations to policies that conflict with their sincerely held religious beliefs and their engagement in protected activity violates Title VII.

117. As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in the amount of two hundred thousand dollars, ($200,000.00), including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## COUNT VI
### RETALIATION
### Violation of the D.C. Human Rights Act

118. Plaintiff incorporates by reference all preceding and subsequent paragraphs hereto as if fully set forth herein.

119. Defendants engaged in systemic retaliation against Plaintiffs because they requested a reasonable religious accommodation.

120.	Defendants' aforesaid retaliatory action was intentional, deliberate, willful, and conducted in callous disregard of Plaintiffs' rights to be free from workplace discrimination on the basis of their religion, their membership in a protected class, and their right to request and obtain an accommodation to policies that conflict with their sincerely held religious beliefs.

121.	In retaliation for engaging in protected activity, Defendants subjected Plaintiff to adverse employment action as articulated above.

122.	Defendants' retaliation against Plaintiff because of their religion, membership in a protected class, and the exercise of their right to request religious accommodations to policies that conflict with their sincerely held religious beliefs and their engagement in protected activity violates Title VII.

123.	As a direct and proximate result of Defendants' retaliation, Plaintiff sustained economic injuries in the amount of two hundred thousand dollars, ($200,000.00), including the denial of promotional opportunity, humiliation, embarrassment, unnecessary pain and suffering, and has incurred medical expenses, attorneys' fees, and costs associated with this action.

## ATTORNEY'S FEES

124.	Plaintiff is entitled to an award of attorney's fees and reimbursement of the costs and expenses incurred in relation to prosecuting this action pursuant to Title VII, 42 U.S.C. § 2000e-5(k) as well as other applicable statutory provisions under which this action is brought.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in Plaintiff's favor, and award Plaintiff such relief as to make Plaintiff whole and remedy the aforesaid violations; and hold Defendant liable and in doing so, award all legal and equitable relief provided by law, including but not limited to:

a. Temporary injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

b. Declaratory relief finding Defendant's actions in discriminating against her in the workplace are unconstitutional;

c. Injunctive relief providing Plaintiff with a reasonable accommodation and otherwise non-hostile work environment;

d. Compensatory damages for the injuries sustained and the medical bills and costs incurred in the amount of $1,200,000.00 for each respective Plaintiff, jointly and severally, and based upon damages in the amount of $200,000.00 per violation of each count raised herein;

e. An award of reasonable attorney's fees and litigation costs; and

f. Any such other relief this Honorable Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.


Dated: August 23, 2023

Respectfully submitted,

/S/ MICHAEL A. YODER
Michael A. Yoder
LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (202) 595-4504
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiff*