UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAYMOND HILDEBRAND, *et al.*,

    *Plaintiffs*,

v.

UNITED STATES DEPARTMENT OF
DEFENSE, *et al.*,

    *Defendants*.

Civil Action No. 23-2459 (LLA)

## **MEMORANDUM OPINION**

Raymond "Drew" Hildebrand and Taylor Hildebrand bring this employment discrimination action against the United States Department of Defense ("DOD") and Frank Kendall III, the Secretary of the United States Air Force. ECF No. 1. Defendants move to dismiss the complaint or—in the alternative—transfer the case to the Western District of Oklahoma. ECF No. 8. The matter is now fully briefed. ECF Nos. 8, 9, 11. For the reasons explained below, the court will transfer this case to the Western District of Oklahoma.

### I.    FACTUAL BACKGROUND

The following factual allegations drawn from the Hildebrands' complaint, ECF No. 1, are accepted as true for the purpose of evaluating Defendants' motion to dismiss, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Drew and Taylor Hildebrand are brothers who work and live together. ECF No. 1 ¶ 1. In June 2015, the DOD hired Drew as an aircraft mechanic at Tinker Air Force Base in Oklahoma City, Oklahoma. *Id.* ¶¶ 1, 20. Three years later, in April 2018, it hired Taylor as an aircraft electrician at the same base. *Id.* ¶ 20. Both Drew and Taylor are devout Christians. *Id.* ¶ 23.

In September 2021—about a year and a half into the COVID-19 pandemic—President Biden signed Executive Order No. 14043 ("EO 14043"), which "require[d] COVID-19 vaccination for all Federal employees," subject only to exceptions required by law. Exec. Order No. 14,403, 86 Fed. Reg. 50989 (Sept. 14, 2021). In implementing EO 14043, Defendants provided two types of exceptions to the vaccine requirement: (1) an exemption, which "allow[ed] a civilian Air Force employee to continue his or her employment without becoming vaccinated and without the imposition of any additional conditions," ECF No. 1 ¶ 39; and (2) an accommodation, which "allow[ed] a[n] . . . employee to continue his or her employment, so long as he or she adhere[d] to a subsequent condition . . . imposed in lieu of vaccination," *id.* ¶ 40. According to the complaint, Defendants granted exemptions to civilian Air Force employees whose disabilities or medical conditions "prevented them from getting vaccinated." *Id.* ¶¶ 34, 41. The Hildebrands also allege that, as of the date they filed their complaint, "Defendants [had] not granted any religious accommodations."[1] *Id.* ¶ 34.

Defendants told the Hildebrands that, "in order to maintain their employment, [they] needed to become vaccinated against COVID-19." *Id.* ¶ 22. The Hildebrands sought religious accommodations because "it is fundamental to their Christian faith that [they] refuse to receive or participate in any medical intervention, including a vaccination, if their informed consciences determine that the risks outweigh the benefits, or if doing so constitutes a sin." *Id.* ¶ 55. While their accommodation requests were pending, Defendants permitted the Hildebrands to continue working without being vaccinated as long as they "submitted to weekly COVID-19 testing and

---

[1] The Hildebrands seem to contradict themselves later in the complaint. In paragraph 42, they state that while "Defendants did not . . . grant *exemptions* to civilian Air Force employees" on religious grounds, Defendants did "grant[] *accommodations*" to employees "whose sincerely held religious beliefs prevented them from getting vaccinated." ECF No. 1 ¶ 42.

provided their respective supervisors with negative test results . . . at the beginning of each week." *Id.* ¶ 24. Despite complying with the testing requirement, the Hildebrands "were repeatedly and routinely harassed because their religious beliefs conflicted with the . . . mandatory vaccination policy." *Id.* ¶ 25 n.2.

In January 2022, the United States District Court for the Southern District of Texas entered a preliminary injunction barring the federal government, including Defendants, from implementing or enforcing EO 14043. *Feds for Med. Freedom v. Biden*, 581 F. Supp. 3d 826, 836-37 (S.D. Tex. 2022), *aff'd*, 63 F.4th 366 (5th Cir. 2023) (en banc), *vacated as moot*, 144 S. Ct. 480 (2023). In response, Defendants stated that they "w[ould] take no action to implement or enforce the COVID-19 vaccination requirement for civilian employees pursuant to E.O. 14043." ECF No. 1 ¶ 27 (emphasis omitted). Even though there was no longer any mandatory policy necessitating an accommodation, in July 2022, "Defendants reminded [the Hildebrands] that if they fail[ed] to comply with their accommodations and submit weekly testing results . . . [they] would be terminated." *Id.* ¶ 44. Through September 2022, "Defendants continued to require Plaintiffs and other religious civilian . . . employees to submit weekly test results in order to maintain their employment while imposing no such requirement on any other civilian . . . employee[s], both vaccinated *and unvaccinated* alike." *Id.* ¶ 45.

## II.   PROCEDURAL HISTORY

In September 2022, the Hildebrands filed complaints with the Air Force's Equal Employment Opportunity ("EEO") Office. ECF No. 1 ¶ 14. They subsequently filed formal complaints in February 2023, which the EEO Office dismissed in May 2023. *Id.* ¶¶ 15-17. The Hildebrands received notice of the dismissals on May 28. *Id.* ¶ 18.

On August 23, 2023, the Hildebrands filed this suit alleging discrimination, disparate treatment, and retaliation on the basis of religion in violation of Title VII, 42 U.S.C. § 2000e *et seq.* (Counts I, III, and V), and the D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01 *et seq.* (Counts II, IV, and VI). *Id.* ¶¶ 53-123. They seek injunctive and declaratory relief, $2.4 million in compensatory damages ($1.2 million per plaintiff), and attorney's fees. *Id.* at 23-24.

In March 2024, Defendants moved to dismiss for improper venue and failure to state a claim. ECF No. 8. After Defendants filed their motion, the Hildebrands voluntarily dismissed their DCHRA claims (Counts II, IV, and VI). ECF No. 9 at 5. The matter is now fully briefed. ECF Nos. 8, 9, 11.

### III.   LEGAL STANDARDS

When facing a Rule 12(b)(3) motion to dismiss, the plaintiffs bear the burden of "establish[ing] that the district [they] chose is a proper venue." *Taylor v. Shinseki*, 13 F. Supp. 3d 81, 86 (D.D.C. 2014) (quoting 15 Charles Alan Wright et al., *Federal Practice & Procedure* § 3826, at 258 (2d ed. 1986)). In Title VII cases, venue is determined by the statute's specific venue provision, 42 U.S.C. § 2000e-5(f)(3), rather than the general venue statute, 28 U.S.C. § 1391. *See Stebbins v. State Farm Mut. Auto. Ins. Co.*, 413 F.2d 1100, 1102 (D.C. Cir. 1969) (per curiam). Under subsection (f)(3), a plaintiff may bring suit (a) where "the unlawful employment practice is alleged to have been committed," (b) where "the employment records relevant to such practice are maintained and administered," or (c) where "the aggrieved person would have worked but for the alleged unlawful employment practice." 42 U.S.C. § 2000e-5(f)(3). If the defendant is not within any of those three districts, the plaintiff may sue where "the respondent has his principal office." *Id.* When ruling on a Rule 12(b)(3) motion, the court "accepts as true a plaintiff's well-pled factual allegations regarding venue but 'may consider material outside of the

4

pleadings.'" *Demery v. McHugh*, 959 F. Supp. 2d 5, 7 (D.D.C. 2013) (quoting *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).

When a court determines that venue is improper, it can either dismiss the case or transfer it to a proper venue in the interest of justice under 28 U.S.C. § 1406(a). "Whether transferring [a] case is in the interest of justice rests within the sound discretion of the court," *James v. Booz-Allen & Hamilton, Inc.*, 227 F. Supp. 2d 16, 25 (D.D.C. 2002), but doing so is generally preferable to dismissal, *GEICO Corp.*, 792 F. Supp. 2d at 64. When transferring a Title VII case under Section 1406(a), "the judicial district in which the [defendant] has [its] principal office shall in all cases be considered a district in which the action might have been brought." 42 U.S.C. § 2000e-5(f)(3).

## IV. DISCUSSION

The court begins by determining whether this district is the correct venue for the Hildebrands' complaint before deciding whether (and where) the case should be transferred.

### A. Whether Venue Is Proper in This District

Because most federal agencies are headquartered in this district, "courts in this Circuit are especially vigilant" when applying Title VII's venue provision "in order to avoid finding proper venue in the District for every discrimination lawsuit filed against a government agency [regardless of] where the employee was located or where the discrimination actually occurred." *Vasser v. McDonald*, 72 F. Supp. 3d 269, 278 (D.D.C. 2014).

Defendants argue that venue is improper on the face of the complaint because the effects of the unlawful employment acts were felt at Tinker Air Force Base in Oklahoma City, Oklahoma, ECF No. 8-1, at 7, the Hildebrands' employment records are located at a military base in San Antonio, Texas, ECF No. 11, at 2; ECF No. 11-1, and the Hildebrands do not allege that they would have worked in this district but for the unlawful employment practice, ECF No. 8-1, at 7. The Hildebrands

5

respond by asserting that "a substantial portion of the events and decision-making . . . giving rise to this action occurred in the District of Columbia," "the alleged unlawful employment practices were committed within this district, the [relevant] employment records . . . are maintained in this district, and Defendant[s] maintain[] [their] principal office in this district."  ECF No. 9, at 6 (quoting ECF No. 1 ¶¶ 12-13).  The court agrees with Defendants.

The first statutory basis for venue in Title VII suits—where the unlawful employment practice is alleged to have been committed, 42 U.S.C. § 2000e-5(f)(3)—"focuses on the locus of the alleged discrimination."  *Booz-Allen*, 227 F. Supp. 2d at 22.  In making this assessment, the court applies a "'commonsense appraisal' of events having operative significance."  *Shinseki*, 13 F. Supp. 3d at 86 (quoting *Booz-Allen*, 227 F. Supp. 2d at 20).  "[V]enue cannot lie in the District of Columbia when 'a substantial part . . . of the employment practices challenged in [the] action' took place outside the District even when actions taken in the District 'may have had an impact on the plaintiff's situation.'"  *Jones v. Hagel*, 956 F. Supp. 2d 284, 289 (D.D.C. 2013) (quoting *Booz-Allen*, 227 F. Supp. 2d at 20).

The Hildebrands argue that this district is the correct "locus" of unlawful activity, but the court disagrees.  On the one hand, the effects of the challenged testing policy were felt in Oklahoma City, which is where the Hildebrands live and work.  They allege that they were "routinely harassed" because of their religious beliefs and experienced "pecuniary and non-economic injuries . . . including lost wages, benefits, . . . humiliation, embarrassment, [and] unnecessary pain and suffering" stemming from the application of the policy in their home district, not here.  ECF No. 1 ¶¶ 25 n.2, 73.  On the other hand, the "decision-making behind the events giving rise to this action"—namely, the formulation of the testing policy—occurred at Defendants' headquarters: the Pentagon in Arlington, Virginia.  *See Nader v. Sec'y of the Air Force*, 648 F. Supp. 3d 64, 68

6

(D.D.C. 2022) ("The Secretary of the Air Force's residence is . . . the residence of the Air Force itself.  And the Air Force resides at the Pentagon, which is located in Arlington, Virginia, not the District of Columbia.").  Contrary to the Hildebrands' assertions, the Secretary of the Air Force does not reside in this district.  So even accepting as true that "the [COVID-19] Guidance . . . delegated significant decision-making authority to the heads of each respective agency," ECF No. 1 ¶ 37, that does not make the District of Columbia the correct venue.

The Hildebrands cite *Cohen v. U.S. Department of the Air Force*, 707 F. Supp. 12 (D.D.C. 1989), to argue that this district "is a proper venue for suits against military defendants based in the Pentagon."  ECF No. 9, at 6 (quoting *Cohen*, 707 F. Supp. at 13).  But the court in *Cohen* "offer[ed] no analysis in support of its sweeping conclusion" and "said nothing about where the Secretary of the Air Force actually performs his duties."  *Nader*, 648 F. Supp. 3d at 68-69; *see, e.g.*, *Carter v. Wilson*, No. 17-CV-2143, 2019 WL 13242563, at *3 (D.D.C. Mar. 25, 2019) (disagreeing with *Cohen*'s venue determination).  And in the specific context of Title VII venue disputes, countless judges have held that this district is an improper venue for suits against Department of Defense officials.  *See, e.g.*, *Webster v. Mattis*, 279 F. Supp. 3d 14, 18-19 (D.D.C. 2017); *Dehaemers v. Wynne*, 522 F. Supp. 2d 240, 247 (D.D.C. 2007).

The Hildebrands cite only one other case in support of the *Cohen* proposition—*Mundy v. Weinberger*, 554 F. Supp. 811 (D.D.C. 1982)—but it does not help them either.  *See* ECF No. 9, at 6-7.  In *Mundy*, venue was proper in this district in a suit against DOD defendants because the plaintiff was employed at the Court of Military Appeals *in* the District of Columbia and "his grievance stem[med] directly from [that] employment and from the decisions of others about that

7

employment." 554 F. Supp. at 818. *Cohen* and *Mundy* therefore do not establish this district as a proper venue.[2]

Title VII's second statutory basis for venue allows a plaintiff to sue in the district where the employer "maintain[s] and administer[s]" the plaintiffs' employment records. 42 U.S.C. § 2000e-5(f)(3). The Hildebrands' assertion that "their employment records are electronically stored, housed, and available in this District," ECF No. 9, at 6, is not enough to carry their burden for several reasons. First, the "statute's use of the singular (i.e., '*the* judicial district') makes clear that Congress intended venue to lie . . . [only where] the complete, 'master' set of employment records" is maintained. *Booz-Allen*, 227 F. Supp. 2d at 22-23 (emphasis added) (quoting *Washington v. Gen. Elec. Corp.*, 686 F. Supp. 361, 363 (D.D.C. 1988)). That the records may be accessed in this district is not enough to establish venue here. *See Washington*, 686 F. Supp. at 363 ("Although Congress could easily have written the statute to make venue proper in *any* judicial district in which employment records may be found, it did not choose to do so."). Second, even if Defendants maintained the Hildebrands' employment records at their headquarters, that would place them in Virginia, not the District of Columbia. Finally, Defendants have submitted a sworn declaration from Kimberly Reese, the custodian for all Air Force civilian and military personnel records, stating that "[a]ll personnel records management functions are located at Joint Base San Antonio Randolph," in Texas. ECF No. 11-1; *see Demery*, 959 F. Supp. 2d at 7 (explaining that a court may consider materials beyond the pleadings when evaluating a Rule 12(b)(3) motion to dismiss).

The third statutory basis, where the plaintiff "would have worked but for the alleged unlawful employment practice," 42 U.S.C. § 2000e-5(f)(3), plainly does not apply. The Hildebrands

---

[2] Furthermore, unlike this case, neither *Cohen* nor *Mundy* involved Title VII claims.

do not allege that, were it not for the testing policy, they would be employed in the District of Columbia.

The final statutory basis only applies "if the [defendant] is not found within any [of the first three] district[s]," and allows a plaintiff to sue wherever the defendants have their principal office. 42 U.S.C. § 2000e-5(f)(3). Even if the Hildebrands could avail themselves of this remainder provision (they cannot), it would not make the District of Columbia the proper venue. As discussed above, the Air Force's principal office is at the Pentagon in Virginia. *See Nader*, 648 F. Supp. 3d at 68.

### B.    Transfer of Venue

Having determined that venue does not lie in this district, the court will transfer the case to an appropriate venue rather than dismiss it. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (indicating that the "interest of justice" generally favors transfer, rather than dismissal). Under 42 U.S.C. § 2000e-5(f)(3), venue would be proper in either the Eastern District of Virginia (where a substantial portion of the allegedly unlawful acts occurred and where Defendants reside) or the Western District of Oklahoma (where the effects of the allegedly unlawful acts were primarily felt and where the Hildebrands reside). Both parties have indicated a preference for transferring to the Western District of Oklahoma, *see* ECF No. 8-1, at 8-9 (requesting, in lieu of dismissal, a transfer to the Western District of Oklahoma); ECF No. 9, at 7 (same), and the court will honor that preference.

### V.    CONCLUSION

For the foregoing reasons, the court will transfer the case to the Western District of Oklahoma but otherwise deny Defendants' motion. Additionally, the court will direct Defendants to respond to the complaint no later than twenty-one days after the case is docketed in the Western

District of Oklahoma. An Order consistent with this Memorandum Opinion will issue contemporaneously.

                                                                                                       */s/*
_____
LOREN L. ALIKHAN
United States District Judge

Date:   December 9, 2024